UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANET HOPKINS,<br><br>　　　　　　　　Plaintiff,<br><br>　　-against-<br><br>TOTAL CARE RX,<br><br>　　　　　　　　Defendant. | Civil Action No.　　1:22-cv-7737<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Janet Hopkins, by and through her attorneys, The Law Office of Christopher Q. Davis, PLLC, alleges as follows:

## NATURE OF ACTION

1. Plaintiff Janet Hopkins brings this action against Defendant Total Care Rx for damages suffered because of Defendant's violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"), the New York State Human Rights Law, Executive Law §§ 290–301 ("NYSHRL"), and the New York City Human Rights Law, Admin. Code §§ 8-101–8-703 ("NYCHRL").

## PARTIES

2. Plaintiff Janet Hopkins is a resident of Albertson, New York, and a citizen of the state of New York.

3. At all relevant times, Ms. Hopkins was an employee of Defendant Total Care under the ADA, the FMLA, the NYSHRL, and the NYCHRL.

4. By June 2021, Ms. Hopkins had worked for Total Care for more than one year and had worked for more than 1,250 hours; she was therefore an eligible employee under the FMLA.

5. Defendant Total Care is headquartered at 223-10 Union Turnpike, Oakland Gardens, New York, which is located in Queens County.

6. Defendant is an employer under the ADA, the FMLA, the NYSHRL, and the NYCHRL.

7. Defendant had 50 or more employees in its New York office for each working day during each of 20 or more calendar workweeks in 2022 or 2021 and is therefore a covered employer under the FMLA.

## JURISDICTION AND VENUE

8. This court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 (federal question jurisdiction), the FMLA, the ADA, and 28 U.S.C. § 1337 ("The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce…"). The court has jurisdiction over Plaintiffs' state and city law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

9. Venue is proper in the United States District Court, Eastern District of New York, under 28 U.S.C. § 1391, because Defendant's principal place of business is located in this district and the events and omissions that give rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PREREQUISITES

10. On April 7, 2022, Ms. Hopkins filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) alleging that Defendant discriminated against her based on her disability and retaliated against her in violation of the ADA.

11. On September 23, 2022, the EEOC issued a Notice of Right to Sue letter authorizing Ms. Hopkins to bring this claim in federal or state court within 90 days.

12. Any other prerequisites to the filing of this suit have been met.

## FACTUAL ALLEGATIONS

13. Plaintiff Janet Hopkins began working for Total Care over 20 years ago, in 2000.

14. At the time, the company was known as UNIRX.

15. Over the course of her long career with Total Care, Ms. Hopkins was a valued and trusted employee.

16. Most recently, Ms. Hopkins was working in the billing department – handling Medicare claims, making sure insurance billing was correct, and managing audits, among other responsibilities.

17. Ms. Hopkins is 62 years old.

18. Approximately three years ago, Ms. Hopkins was diagnosed with a progressive autoimmune disease known as multifocal motor neuropathy (MMN).

19. MMN is a rare, progressively worsening condition where muscles in the extremities gradually weaken. The disorder, a motor neuropathy syndrome, is sometimes mistaken for amyotrophic lateral sclerosis (ALS) because of the similarity in the clinical picture.

20. Ms. Hopkin's disability is treated through intravenous infusions of immunoglobin that she receives at home every 28 days. The injections are essential treatment for her disease.

21. Ms. Hopkins provided Total Care with medical documentation of her condition and her need for regular infusions.

22. As a reasonable accommodation for her serious medical condition, to permit her to receive the infusions while also completing her job functions, Total Care permitted her to work from home on these days.

23. Ms. Hopkins had no problems completing her work at home nor did Total Care raise any objections to the accommodation or to the quality of her work product or productivity during the times she worked from home.

24. From June 2021 to September 2021, Ms. Hopkins took 12 weeks of leave under the FMLA because of anxiety and depression relating to her medical condition.

25. Ms. Hopkins was told by personnel in the Human Resources Department that she had to come into the office every 30 days to check in.

26. On one of those occasions, the current CEO, Robert Raffalo, told Ms. Hopkins that she was not permitted to be there, and that she had to leave the building. When she told him that HR had required her to check in, he said, "I do not know HR but you need to leave."

27. After her leave ended, Ms. Hopkins returned to the office on September 7, 2021.

28. At that time, she was required to attend an employee orientation. After the orientation, she met with Total Care's HR manager, Geri Johnson, and the comptroller, Phil Vacchiano.

29. Johnson and Vacchiano informed Ms. Hopkins that she would not be getting her regular job back. Instead, she would have a new job: "vaccine guru."

30. This was a challenging new position, with significantly different responsibilities from the position she had held before her FMLA leave.

31. Vacchiano and Johnson told Ms. Hopkins that she would not be permitted to work from home during her infusions as she had in the past, because "no one at this company works from home anymore."

32. Ms. Hopkins then asked if she could work part-time, so she would be able to be home for her infusions.

33. Vacchiano and Johnson rejected her request.

34. Ms. Hopkins had been working from home every 28 days without incident for over three years.

35. Contrary to the statement that "no one works from home anymore," other employees *were* permitted to work from home at that time, at least on a part-time basis. Those employees included Johnson and Vacchiano themselves as well as the new pharmacist in charge, Al Lopez.

36. The monthly infusions are essential treatments for Ms. Hopkins's disability.

37. As a result of Total Care's refusal to accommodate her disability, Ms. Hopkins had no choice but to resign from her job, effective September 21, 2021.

38. Total Care unfairly put Ms. Hopkins in the untenable position of choosing between her job and her health.

## FIRST CAUSE OF ACTION
### Disability Discrimination in Violation of the ADA

39. Ms. Hopkins incorporates the allegations above.

40. At all relevant times, Ms. Hopkins was an "employee" of Total Care under the ADA, 42 U.S.C. § 12111(4).

41. At all relevant times, Total Care was an "employer" under the ADA, 42 U.S.C. § 12111(5).

42. The ADA prohibits discrimination against a qualified individual on the basis of disability in the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). Disability discrimination includes refusal to provide a reasonable accommodation.

43. Ms. Hopkins is a person with a disability within the meaning of the ADA. She suffers from MMN, a progressive autoimmune disorder that affects her neurological system and substantially limits her fine motor functions, including her ability to use her hands, among other major life activities.

44. Ms. Hopkins was able to perform the essential functions of her job with the reasonable accommodation of working from home on the days that she had to have infusions.

45. She is therefore a qualified individual with a disability and a record of disability under the ADA.

46. For over three years, Total Care knew about Ms. Hopkins's disability. During that time, Total Care accommodated her disability both by allowing her to work from home during her infusions and, in 2021, by allowing her to take a leave of absence.

5

47. When Ms. Hopkins returned from medical leave in September 2021, Total Care (1) suddenly and unreasonably stated that it would no longer accommodate her by allowing her to work from home, stating that: "no one at [Total Care] works from home anymore"; (2) refused to allow her to work part-time, which would have allowed her to be home for her infusions; and (3) assigned her to a new role as "vaccine guru" with significantly different and more onerous responsibilities than the role she held previously.

48. Total Care's refusal to accommodate Ms. Hopkins or engage in good faith in any interactive process with her is evidence of discriminatory animus and violates the ADA.

49. Ms. Hopkins requested accommodations for her medical disability that were reasonable within the meaning of the law. Reasonable accommodations under the ADA may include "part-time or modified work schedules," 45 C.F.R. § 84.12.

50. Total Care's decision to cease its accommodation of Ms. Hopkins's disability after allowing her to work from home on infusion days violates the ADA.

51. Total Care's refusal to accommodate Ms. Hopkins's disability and failure to engage in the interactive process constitutes disability discrimination and violates the ADA.

**SECOND CAUSE OF ACTION:**
**Retaliation in Violation of the ADA**

52. Ms. Hopkins incorporates the allegations above.

53. Beginning in June 2021, Ms. Hopkins took twelve weeks of medical leave under the FMLA because of anxiety and depression stemming from her battle with MMN. Her anxiety and depression and her MMN are serious health conditions and are disabilities within the meaning of the ADA.

54. Ms. Hopkins' leave of absence was therefore protected as a reasonable accommodation under the ADA and her taking the leave was protected activity.

6

55. Upon her return from the leave of absence, Ms. Hopkins was placed in a new job that was not equivalent to her old job.

56. Total Care also informed Ms. Hopkins that she would no longer be permitted to work from home every 28 days to receive infusions nor would she be permitted to work part-time.

57. Total Care's adverse actions against Ms. Hopkins after she took a leave of absence protected under the ADA constitute retaliation in violation of the ADA.

### THIRD CAUSE OF ACTION:
### Constructive Discharge Under the ADA

58. Ms. Hopkins incorporates the allegations above.

59. Because of Total Care's refusal to accommodate Ms. Hopkins's disability by allowing her to work from home during her infusions or to work part-time, Ms. Hopkins had no choice but to quit her job.

60. Total Care's revocation of Ms. Hopkins's work-from-home accommodation on days when she was to receive infusion treatment for MMN was a deliberate and serious alteration of the conditions of employment.

61. Total Care unfairly put Ms. Hopkins in the untenable position of choosing between her job and her health. Total Care intentionally created an intolerable work atmosphere for Ms. Hopkins. As a result, she was forced to quit her position with Total Care.

62. Total Care's actions constitute constructive discharge in violation of the ADA.

### FOURTH CAUSE OF ACTION:
### Retaliation in Violation of the FMLA

63. Ms. Hopkins incorporates the allegations above.

64. Ms. Hopkins was an "employee" within the meaning of the FMLA.

65. Total Care was Ms. Hopkins's "employer" within the meaning of the FMLA.

7

66. Ms. Hopkins is, and has been at all relevant times, a qualifying individual who was entitled to FMLA leave.

67. Total Care is, and has been at all relevant times, a covered employer under the FMLA.

68. From June 2021 to September 2021, Ms. Hopkins engaged in protected activity by taking medical leave to which she was entitled under the FMLA.

69. Immediately upon her return from a leave of absence protected under the FMLA, Ms. Hopkins was placed in a different, more challenging position that was not equivalent to her former role, her previous accommodation was terminated, and her requested alternative accommodation of working part-time was denied.

70. These actions constitute retaliation in violation of the FMLA.

## FIFTH CAUSE OF ACTION:
### Disability Discrimination in Violation of the NYSHRL

71. Ms. Hopkins incorporates the allegations above.

72. At all relevant times, Ms. Hopkins was an "employee" of Total Care under the NYSHRL.

73. At all relevant times, Total Care was an "employer" under the NYSHRL.

74. Ms. Hopkins is, and has been at all relevant times, a qualified individual with a disability and a record of a disability within the meaning of the NYSHRL.

75. Ms. Hopkins is, and has been at all relevant times, otherwise qualified for her position with Total Care; she was, and is, able to perform the essential functions of her position with a reasonable accommodation.

76. Total Care was aware of Ms. Hopkins's disability and Ms. Hopkins submitted medical paperwork documenting her need for accommodation, namely, infusions every 28 days.

77. At all relevant times, Ms. Hopkins requested accommodations for her disability that were reasonable within the meaning of the law.

78. Under the law, Total Care cannot deny accommodations to disabled employees that it otherwise extends to other employees. Here, the periodic work from home accommodation requested by Ms. Hopkins was extended to other employees.

79. Total Care's refusal to accommodate Ms. Hopkins's disability constitutes disability discrimination in violation of the NYSHRL.

## SIXTH CAUSE OF ACTION:
### Retaliation in Violation of the NYSHRL

80. Ms. Hopkins incorporates the allegations above.

81. Under the NYSHRL it is unlawful for an employer to retaliate against an employee for exercising her protected to right to an accommodation.

82. Ms. Hopkins engaged in protected activity when she took twelve weeks of medical leave as an accommodation for her depression and anxiety stemming from the effects of MMN.

83. Total Care was aware of Ms. Hopkins's ongoing battle with MMN and her need for medical leave as an accommodation.

84. Total Care's decision to drastically change Ms. Hopkins position and revoke her work from home accommodation immediately upon her return from protected leave amounts to discriminatory adverse action motivated by Ms. Hopkins's status as a member of a protected class.

85. Total Care's adverse actions against Ms. Hopkins constitute retaliation in violation of the NYSHRL.

## SEVENTH CAUSE OF ACTION:
### Constructive Discharge in Violation of the NYSHRL

86. Ms. Hopkins incorporates the allegations above.

87. Total Care's revocation of Ms. Hopkins's work from home accommodation on days when she was to receive infusion treatment for MMN was a deliberate and serious alteration of the conditions of employment. Ms. Hopkins was forced to choose between treating her serious medical condition and maintaining her employment.

88. Because of Total Care's refusal to accommodate Ms. Hopkins's disability by allowing her to work from home during her infusions or to work part-time, Ms. Hopkins had no choice but to quit her job.

89. Total Care intentionally created a work atmosphere so intolerable to Ms. Hopkins and detrimental to her health that she was forced to quit involuntarily.

90. Total Care's actions constitute constructive discharge in violation of the NYSHRL.

## EIGHTH CAUSE OF ACTION:
### Disability Discrimination in Violation of the NYCHRL

91. Ms. Hopkins incorporates the allegations above.

92. Ms. Hopkins was an "employee" within the meaning of the NYCHRL.

93. Total Care was Ms. Hopkins's "employer" within the meaning of the NYCHRL.

94. Ms. Hopkins is, and has been at all relevant times, otherwise qualified for her position with Total Care; she was, and is, able to perform the essential functions of her position with a reasonable accommodation.

95. Total Care knew of Ms. Hopkins's disability but nevertheless discriminated against her by inexplicably moving her to a markedly different and more challenging position upon her return from medical leave, and by suddenly revoking her work-from-home accommodation on the days of her scheduled infusions. Total Care's refusal to accommodate Ms. Hopkins's disability constitutes disability discrimination in violation of the NYCHRL.

## NINTH CAUSE OF ACTION:
### Retaliation in Violation of the NYCHRL

96. Ms. Hopkins incorporates the allegations above.

97. Under the NYCHRL § 8-107(7), it is unlawful for an employer to retaliate against an employee for requesting a reasonable accommodation due to a disability.

98. Ms. Hopkins engaged in protected activity when she took twelve weeks of medical leave as an accommodation for her depression and anxiety stemming from the effects of MMN.

99. Total Care was aware of Ms. Hopkins ongoing battle with MMN and her need for medical leave as an accommodation.

100. Total Care's decision to drastically change Ms. Hopkins's position and revoke her work from home accommodation immediately upon her return from protected leave amounted to discriminatory adverse action motivated by Ms. Hopkins's exercise of protected leave as accommodation for her disability.

101. Total Care's adverse actions against Ms. Hopkins constitute retaliation in violation of the NYCHRL.

## TENTH CAUSE OF ACTION:
### Constructive Discharge in Violation of the NYCHRL

102. Ms. Hopkins incorporates the allegations above.

103. Because of Total Care's refusal to accommodate Ms. Hopkins's disability by allowing her to work from home during her infusions or to work part-time, Ms. Hopkins had no choice but to quit her job.

104. Total Care's revocation of Ms. Hopkins's work from home accommodation on days when she was to receive infusion treatment for MMN was a deliberate and serious alteration of the conditions of employment. Ms. Hopkins was forced to choose between treating her serious medical condition and maintaining her employment.

105. Total Care intentionally created a work atmosphere so intolerable to Ms. Hopkins that she was forced to quit involuntarily.

106. Total Care's actions constitute constructive discharge in violation of the NYCHRL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a. An award to Plaintiff for her actual damages in an amount to be determined at trial for lost wages and benefits, health insurance premiums, and an award of back pay and front pay

b. An award to Plaintiff of compensatory damages in an amount to be determined at trial for the future pecuniary loss, reputational harm, humiliation, mental anguish, pain and suffering and emotional distress sustained by her

c. An award of prejudgment and postjudgment interest

d. An award of punitive damages to deter future conduct by Defendant, in an amount to be determined at trial

e. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

f. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all questions of fact raised by the Complaint.

Dated: December 19, 2022
New York, New York

Margaret A. Malloy
Law Office of Christopher Q. Davis
80 Broad Street, Suite 703
New York, NY 10004
518-692-3748
mmalloy@workingsolutionsnyc.com

12